## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | |
|---|---|
| MGPI PROCESSING, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| PENFORD CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Plaintiff MGPI Processing, Inc. ("MGPI Processing") and for its Complaint against Defendant Penford Corporation ("Penford") states as follows:

### THE PARTIES

1. Plaintiff MGPI Processing is a corporation organized and existing under the laws of the state of Kansas, with its principal place of business located at 100 Commercial Street, Atchison, Kansas 66002-0302.

2. MGPI Processing was formerly MGP Ingredients, Inc. Pursuant to an Agreement of Merger and Plan of Reorganization dated January 3, 2012, its name was changed to MGPI Processing, Inc.

3. Upon information and belief, Defendant Penford Corporation is a for-profit corporation organized and existing under the laws of the state of Colorado with its principal place of business located at 7094 S. Revere Parkway, Centennial, Colorado 80112-3932.

### JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the

United States, Title 35 of the United States Code. This Court may exercise subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331 and 1338.

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because a substantial part of the events giving rise to the claims asserted herein occurred in this District and because Penford is subject to personal jurisdiction in this District.

6. Penford is subject to this Court's specific and general jurisdiction, pursuant to due process and/or the Kansas Long Arm Statute, on the grounds that Penford has committed acts of patent infringement in this District and the State of Kansas and that Penford regularly conducts and/or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from the sale of goods and services to the persons and/or entities of this District and the State of Kansas. These contacts include providing a website with advertisements and information regarding the accused product, PenFibe RS, to consumers in the State of Kansas along with information on a specific person to contact regarding purchasing said product and a phone number for same. These contacts also include having sales staff specifically devoted to the State of Kansas. On information and belief, these contacts also include entering into contracts relating to the patent at issue in the State of Kansas. These contacts also include sending press releases into the State of Kansas touting the fact that they had licensed the patent at issue.

## BACKGROUND FACTS

### THE PATENT-IN-SUIT AND CLAIMED TECHNOLOGY

7. Kansas State University Research Foundation ("KSURF") owns the patent-in-suit, which teaches and claims a variety of methods for producing resistant starches from native starches. Resistant starches (RS) are less susceptible to digestion in the human body, behave more like fiber, and thus can be used to create low calorie food options.

8. The patent-in-suit is U.S. Patent No. 5,855,946 (the '946 Patent), which is entitled "FOOD GRADE STARCH RESISTANT TO ALPHA-AMYLASE AND METHOD OF PREPARING THE SAME" and was duly, validly, and legally issued by the United States Patent and Trademark Office on January 5, 1999.  A true and correct copy of the '946 Patent is attached hereto as **Exhibit A** and made a part hereof by reference as though fully set forth herein.

9. The '946 Patent teaches and claims the preferred methods of producing resistant starch, specifically $RS_4$, using sodium trimetaphosphate (STMP), sodium tripolyphosphate (STPP), phosphoryl chloride ($POCl_3$), and other phosphorylating agents.

### THE EXCLUSIVE LICENSE BETWEEN KSURF AND MGPI PROCESSING

10. KSURF, by an Exclusive License Agreement bearing the Effective Date of March 1, 2003, granted to MGPI Processing a royalty-bearing exclusive license to the '946 Patent, among other intellectual property.

11. Specifically, the exclusive license from KSURF granted MGPI Processing all substantial rights in the patent, including but not limited to, the right to make, have made, use, import or sell products covered by the '946 Patent; the right to grant sublicenses to make, have made, use or sell products covered by the '946 Patent; and the right to bring actions for patent infringement against any third party who at any time has infringed or is suspected of infringing the '946 Patent.

12. Thus, MGPI Processing has the legal right and authority to bring this action, protect the collective intellectual property rights of both KSURF and MGPI Processing, and stop all infringement of the '946 Patent.

### HISTORY BETWEEN MGPI PROCESSING AND PENFORD

13. Penford is aware of the market and demand for resistant starch and has long sought to sublicense MGPI Processing's rights to the '946 Patent. In fact, Penford and MGPI Processing have entered into two different agreements whereby Penford sublicensed certain specific and limited rights in the '946 Patent.

14. On April 18, 2008, Penford and MGPI Processing entered into an agreement whereby Penford sublicensed certain of MGPI Processing's exclusive rights in producing resistant starch from native potato starch ("the 2008 Agreement").

15. On March 18, 2009, Penford's President and General Manager, John Randall, gave formal notice of Penford's desire to terminate the 2008 Agreement effective April 1, 2009.

16. After this termination, Penford once again contacted MGPI Processing about sublicensing opportunities to certain rights in the '946 Patent and informed MGPI Processing that it had a significant and confidential potential customers for potato resistant starch. Specifically, Penford sought a limited license from MGPI Processing to produce the potato RS under terms similar to those set out in the parties' 2008 Agreement, but at a higher royalty rate and strictly limited to the single, unidentified customer.

17. After numerous discussions, MGPI Processing and Penford entered into a second agreement in approximately February 2011 (the "2011 Agreement") that limited Penford's sublicense rights to production of potato resistant starch for only the unidentified customer.

18. Penford's General Counsel, Christopher L. Lawlor, recently confirmed that "shortly after" execution of the 2011 Agreement between the parties, the unidentified customer in the agreement abandoned its plans to purchase any potato resistant starch from Penford. Thus, the 2011 Agreement has been effectively moot since early 2011, since any sublicense rights

granted were directly tied to the purchasing decisions of the customer, whom subsequently declined. A true and correct copy of the letter from Penford, dated May 7, 2014, is attached hereto as **Exhibit B**.

### PENFORD'S INFRINGEMENT OF THE PATENT-IN-SUIT

19. Penford markets and sells, in this District and elsewhere, a product entitled PenFibe RS, which Penford touts as "a potato-based resistant starch that serves as a dietary fiber source" on its website: www.penford.com/News.

20. A technical data sheet for PenFibe RS, also available via Penford's website, indicates that the product "is a food grade modified resistant potato starch that can be used to increase total dietary fiber of food and reduce caloric content." Moreover, the Nutritional Analysis on said technical data sheet indicates a higher than normal phosphorus content compared to that naturally found in native potato starch. This is highly indicative of a product that has been phosphorylated.

21. Based upon this information, MGPI Processing conducted and/or commissioned numerous analytical tests and chemical analyses of PenFibe RS samples, including a Nuclear Magnetic Resonance ("NMR") test.

22. These tests confirmed that Penford's PenFibe RS product was created through phosphorylation from native potato starch in such a way so as to infringe the claims of the '946 Patent. According to the scientist who analyzed the NMR test results, "[t]here can be no doubt that PenFibe is a phosphate cross-linked starch."

23. Penford has been aware of the '946 Patent since prior to April 2008 when it entered into the first limited sublicense agreement with MGPI Processing for the production of resistant starch from native potato starch.

24. The PenFibe RS product is not the subject of any valid license between the parties. Penford's General Counsel recently admitted that the PenFibe RS is "not covered by or produced under the 2011 Agreement." *See* Exhibit B.

25. Moreover, on April 24, 2014, MGPI Processing sent Penford a letter directly raising its concerns regarding the contents of the PenFibe RS product and the likelihood that it infringes at least one of the claims of the '946 Patent. In response, Penford argued that PenFibe RS does not infringe MGPI Processing's patent rights. *See* Exhibit B.

## COUNT I
### (INFRINGEMENT OF U.S. PATENT NO. 5,855,946)

26. MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

27. Penford has directly infringed, and continues to directly infringe, at least one claim of the '946 Patent under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents.

28. Penford's infringing acts include, but are not limited to: making, using, selling, offering to sell and/or importing products embodying the patented invention, including its PenFibe RS product.

29. Penford has been or is currently indirectly infringing the '946 Patent by way of intentionally inducing others to make, use, sell, and/or import products embodying at least one claim of the '946 Patent.

30. Penford's infringing acts are without license or authorization from MGPI Processing and/or KSURF.

31. With knowledge of the '946 Patent and its claims since at least April 2008, Penford's infringement has been and continues to be reckless, without objective basis, and willful.

32. As a direct and proximate consequence of Penford's infringement of the '946 Patent, MGPI Processing has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights.

33. With knowledge of the '946 Patent, Penford's infringement is causing, has caused and will continue to cause MGPI Processing significant injury, monetary harm in an amount to be proven at trial, and irreparable harm for which there is no adequate remedy at law.

34. MGPI Processing has informed Penford of its infringement of the '946 Patent and Penford continues to knowingly and willfully infringe the '946 Patent in blatant disregard of the intellectual property rights of MGPI Processing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MGPI Processing, Inc. respectfully prays for a judgment against Defendant Penford Corporation as follows:

(a) A judgment that Penford has infringed one or more of the claims of the '946 Patent, directly, either literally or through the doctrine of equivalents, or indirectly;

(b) An award of all damages to which MGPI Processing is entitled to under 35 U.S.C. § 284 for all past and continuing infringement, including but not limited to all lost profits and/or reasonable royalties, and an order requiring a full accounting of the same;

(c) Enhanced damages in accordance with the provisions of 35 U.S.C. § 285 as a result of the knowing, willful, and wanton nature of Penford's infringing conduct;

(d) An assessment of interest, both prejudgment and post judgment, on the damages awarded;

(e) A finding that this case is exceptional 35 U.S.C. § 285 and an award of all attorneys' fees incurred by MGPI Processing in this action;

(f) A preliminary and permanent injunction against Penford, and its officers, directors, employees, agents, affiliates and all others acting in concert therewith from any continued manufacture, sale or use of PenFibe RS or any other infringement of the '946 Patent;

(g) An accounting of all goods in the possession, custody, or control of Penford that infringe the '946 Patent and an Order directing that all such goods be delivered up and destroyed within thirty (30) days from the entry of judgment;

(h) An award of MGPI Processing's costs in bringing and prosecuting this action; and

(i) Any such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), MGPI Processing hereby demands a jury trial on all issues so triable by jury.

Date:  December 19, 2014

                        Respectfully submitted,

                        LATHROP & GAGE LLP

                        By:  /s/ David R. Barnard
                            David R. Barnard  (KS #17955)
                            DBarnard@lathropgage.com
                            David R. Frye (KS #18133)
                            dfrye@lathropage.com
                            2345 Grand Boulevard, Suite 2800
                            Kansas City, MO 64108-2612
                            Tel: (816) 292-2000
                            Fax: (816) 292-2001

                            Emily R. Davis (KS #25444)
                            edavis@lathropgage.com
                            10851 Mastin Boulevard
                            Building 82, Suite 1000
                            Overland Park, KS  66210-1669
                            Tel: (913) 451-5100
                            Fax: (913) 451-0875

                            *Attorneys for Plaintiff*
                            *MGPI Processing, Inc.*