## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| MGPI PROCESSING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-CV-02634 CM/GLR |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| PENFORD CORPORATION and | ) | |
| INGREDION, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff MGPI Processing, Inc. ("MGPI Processing"), for its Second Amended Complaint against Defendants Penford Corporation and Ingredion, Inc. (collectively, "Defendants"), states as follows:

## INTRODUCTION

1.      This lawsuit arises out of Defendants' manufacture, use, sale, offer for sale, and/or importation of two resistant starch products, Pen-RS80 and PenFibe RS (the "Accused Products"), that infringe several of the claims of U.S. Patent No. 5,855,946 (the "'946 Patent"), as well as Defendants' deliberate and unlawful misappropriation of trade secrets as alleged herein.

2.      MGPI Processing is the exclusive licensee of the '946 Patent, which teaches and claims a variety of methods for producing resistant starches from native starches.

3.      As a direct competitor to Defendants in the chemically-modified, or RS$_4$, resistant starch market, MGPI Processing has suffered, is suffering, and, unless Defendants' unlawful acts are enjoined by the Court, will continue to suffer immediate and irreparable injury to its

business, reputation, and goodwill, for which there is no adequate remedy at law. MGPI Processing accordingly requests that the Court issue preliminary and permanent injunctive relief and award monetary damages, costs, and attorney fees as set forth herein.

## THE PARTIES

4.      Plaintiff MGPI Processing is a for-profit corporation organized and existing under the laws of the State of Kansas with its principal place of business located at 100 Commercial Street, Atchison, Kansas 66002-0302.

5.      MGPI Processing was formerly MGP Ingredients, Inc.  Pursuant to an Agreement of Merger and Plan of Reorganization dated January 3, 2012, its name was changed to MGPI Processing, Inc.

6.      On information and belief, Defendant Penford Corporation ("Penford") is a for-profit corporation organized and existing under the laws of the State of Washington with its principal place of business located at 7094 South Revere Parkway, Centennial, Colorado 80112-3932.

7.      On information and belief, Defendant Ingredion, Inc. ("Ingredion") is a for-profit corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 5 Westbrook Corporate Center, Westchester, Illinois 60154-5749.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.  This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

9.      Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to principles of due process and/or the Kansas long-arm statute, Kan. Stat. Ann. § 60-

308, on the grounds that Defendants have committed the wrongful acts identified in this Second Amended Complaint in this District and the State of Kansas and regularly conduct and/or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from the sale of goods and services to persons and/or entities in this District and the State of Kansas. These contacts include providing websites with advertisements and information regarding the Accused Products to consumers in the State of Kansas along with information concerning whom to contact in order to purchase the Accused Products. These contacts also include having sales staff specifically devoted to the State of Kansas. On information and belief, these contacts also include entering into contracts relating to the Accused Products and the '946 Patent in the State of Kansas and sending press releases into the State of Kansas advertising the Accused Products and touting the fact that Penford sublicensed certain of MGPI Processing's exclusive rights in the '946 Patent.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because a substantial part of the events giving rise to the claims asserted herein occurred in this District, including the commission by Defendants of acts of patent infringement in this District, and because Defendants are subject to personal jurisdiction in this District.

## BACKGROUND FACTS

### The '946 Patent and the Claimed Technology

11.     Kansas State University Research Foundation ("KSURF") owns the '946 Patent, which teaches and claims a variety of methods for producing resistant starches from native starches. Resistant starches (RS) are less susceptible to digestion in the human body, behave more like fiber, and thus can be used to create low-calorie food options.

12.     The '946 Patent, titled "FOOD GRADE STARCH RESISTANT TO ALPHA-AMYLASE AND METHOD OF PREPARING THE SAME," was duly, validly, and legally issued by the United States Patent and Trademark Office on January 5, 1999.  A true and correct copy of the '946 Patent is attached hereto as **Exhibit A** and made a part hereof by reference as though fully set forth herein.

13.     The '946 Patent teaches and claims products consisting of methods of producing and using resistant starch, specifically $RS_4$, using sodium trimetaphosphate (STMP), sodium tripolyphosphate (STPP), phosphoryl chloride/phosphorus oxychloride ($POCl_3$), and other phosphorylating agents.

## The Exclusive License between KSURF and MGPI Processing

14.     KSURF, by an Exclusive License Agreement effective as of March 1, 2003, granted to MGPI Processing a royalty-bearing exclusive license to the '946 Patent, among other intellectual property (the "KSURF Agreement").  The KSURF Agreement remains in full force and effect.

15.     The exclusive license from KSURF pursuant to the KSURF Agreement granted MGPI Processing all substantial rights in the '946 Patent, including without limitation the right to make, have made, use, import, and sell products covered by the '946 Patent; the right to grant sublicenses to make, have made, use, and sell products covered by the '946 Patent; and the right to bring actions for patent infringement against any third party who at any time has infringed or is suspected of infringing the '946 Patent.

16.     Thus, MGPI Processing has the legal right and authority to bring this action, protect the collective intellectual property rights of both KSURF and MGPI Processing, and stop infringement of the '946 Patent.

## The History between MGPI Processing and Penford

17.     MGPI Processing and Penford are direct competitors in the market for chemically-modified resistant starch, also known as $RS_4$ resistant starch. Their collective customer base mainly comprises resellers and manufacturers of processed food products who incorporate $RS_4$ resistant starches into their products in order to enhance the dietary fiber content and reduce the caloric content of such products.

18.     As a direct competitor to MGPI Processing in the $RS_4$ resistant starch market, Penford is aware of the market and demand for $RS_4$ resistant starch and has long understood and sought to derive commercial value from MGPI Processing's rights in the '946 Patent. In fact, Penford and MGPI Processing have entered into several agreements whereby Penford gained access to MGPI Processing's confidential and proprietary information relating to the manufacture of $RS_4$ resistant starch and also sublicensed certain of MGPI Processing's specific and limited rights in the '946 Patent.

## The 2004 Confidentiality, Production, Non-Disclosure, and Broker Agreements

19.     In or about 2004, Penford and MGPI Processing entered into discussions for the purpose of negotiating an agreement whereby Penford would acquire certain trade secrets and other confidential information from MGPI Processing and would produce for MGPI Processing certain quantities of an $RS_4$ resistant starch made under the '946 Patent known as FiberStar 80ST or Fibersym 80 (collectively, "FiberStar/Fibersym 80")—MGPI Processing's $RS_4$ resistant starch product derived from native potato starch using STMP or a mixture of STMP and STPP as a phosphorylating agent, as claimed in the '946 Patent.

20.     On January 22, 2004, Penford and MGPI Processing entered into an agreement whereby MGPI Processing agreed to furnish to Penford certain trade secrets and other

confidential information relating to its patented technology—including MGPI Processing's detailed specifications for manufacturing FiberStar/Fibersym 80, its "optimized process" for manufacturing and testing $RS_4$ resistant starch products such as FiberStar/Fibersym 80, and its confidential methods for assuring the high quality of its $RS_4$ resistant starch products—in exchange for Penford's agreement not to disclose such information to unauthorized persons and to use such information solely for purposes of the parties' negotiations and Penford's performance of the parties' anticipated production agreement (the "2004 Confidentiality Agreement").

21. The 2004 Confidentiality Agreement provided that Penford's confidentiality obligations under the 2004 Confidentiality Agreement would survive any termination of the 2004 Confidentiality Agreement.

22. On April 22, 2004, Penford and MGPI Processing entered into an agreement whereby Penford agreed to manufacture and package for MGPI Processing certain quantities of FiberStar/Fibersym 80 in strict compliance with MGPI Processing's detailed specifications (the "2004 Production Agreement").

23. On April 22, 2004, Penford and MGPI Processing also executed, contemporaneously with the Production Agreement, a Non-Disclosure Agreement whereby Penford agreed not to disclose to unauthorized persons MGPI Processing's trade secrets and other confidential information relating to its patented technology and also agreed to use such information solely for purposes of Penford's performance of the 2004 Production Agreement (the "2004 Non-Disclosure Agreement").

24. The 2004 Production Agreement expressly incorporated by reference the terms of the 2004 Non-Disclosure Agreement.

25. The 2004 Production Agreement provided that Penford's confidentiality obligations under the 2004 Production Agreement and under the 2004 Non-Disclosure Agreement would survive any termination of the 2004 Production Agreement.

26. On October 6, 2004, Penford and MGPI Processing entered into an agreement whereby Penford agreed to serve as broker on behalf of MGPI Processing to promote the sale of MGPI Processing's FiberStar/Fibersym 80 product to specified customers (the "2004 Broker Agreement").

27. Under the 2004 Broker Agreement, Penford agreed that it would (a) use MGPI Processing's confidential information only for MGPI Processing's benefit, as specifically authorized by MGPI Processing pursuant to the 2004 Broker Agreement, and (b) not disclose MGPI Processing's confidential information to any third party without MGPI Processing's prior written consent.

28. The 2004 Broker Agreement provided that Penford's confidentiality obligations under the 2004 Broker Agreement would survive any termination of the 2004 Broker Agreement.

### The 2008 Agreement

29. On April 18, 2008, Penford and MGPI Processing entered into a new agreement whereby Penford sublicensed certain of MGPI Processing's exclusive rights in producing $RS_4$ resistant starch from native potato starch using STMP or a mixture of STMP and STPP as a phosphorylating agent, as claimed in the '946 Patent (the "2008 Agreement").

30. On information and belief, Penford utilized the sublicensed patent rights under the 2008 Agreement to make, use, sell, offer for sale, and/or import a product named Pen-RS80, which is an $RS_4$ resistant starch product derived from native potato starch using STMP or a mixture of STMP and STPP as a phosphorylating agent, as claimed in the '946 Patent.

31. Pen-RS80 is the same product as MGPI Processing's FiberStar/Fibersym 80 product that Penford manufactured and packaged for MGPI Processing pursuant to the 2004 Production Agreement using MGPI Processing's confidential information disclosed to Penford pursuant to the 2004 Confidentiality Agreement and the 2004 Non-Disclosure Agreement.

32. On information and belief, Pen-RS80 was developed and manufactured by largely the same development and quality control team that developed and manufactured MGPI Processing's FiberStar/Fibersym 80 pursuant to the 2004 Production Agreement.

33. The 2008 Agreement contains confidentiality and non-use provisions (the "2008 Confidentiality Provisions") that limit the allowable disclosure and use of information that is deemed confidential under the 2008 Agreement.

34. The 2008 Confidentiality Provisions define "Confidential Information" under the 2008 Agreement to include such things as data, specifications, processes, products, technologies, formulae, equipment, customer information, business information, drawings, pricing information, inventions, trade secrets, and ideas that are owned by or in possession of Penford or MGPI Processing relating to the purpose of the 2008 Agreement.

35. The 2008 Confidentiality Provisions provide, in pertinent part, that information deemed confidential under the 2008 Agreement will be used only in connection with the purpose of the 2008 Agreement, and that such information may be disclosed only to persons directly involved in the performance or evaluation of the 2008 Agreement, and even then only to such extent as is necessary.

36. The 2008 Confidentiality Provisions further provide that they will remain in full force and effect for five years after the termination of the 2008 Agreement or the termination of the KSURF Agreement, whichever is later.

37.     Although the 2008 Agreement terminated on or about April 1, 2009, the 2008 Confidentiality Provisions remain in full force and effect because the KSURF Agreement remains in full force and effect.

### The 2011 Agreement

38.     After the termination of the 2008 Agreement, Penford contacted MGPI Processing about sublicensing certain rights in the '946 Patent and informed MGPI Processing that it had a single significant and confidential potential customer for potato-based $RS_4$ resistant starch.  Specifically, Penford sought a limited sublicense from MGPI Processing to produce potato-based $RS_4$ resistant starch, specifically Penford's Pen-RS80 product, under terms similar to those set out in the 2008 Agreement, but at a different royalty rate and strictly limited to the single, unidentified customer.

39.     On February 7, 2011, after numerous discussions, MGPI Processing and Penford entered into a second agreement (the "2011 Agreement") whereby Penford sublicensed rights from MGPI Processing to produce potato-based $RS_4$ resistant starch, specifically Penford's Pen-RS80 product, under terms similar to those set out in the 2008 Agreement, but at a different royalty rate and strictly limited to production of Pen-RS80 for **only** the single, unidentified customer.

40.     The 2011 Agreement contains confidentiality and non-use provisions (the "2011 Confidentiality Provisions") that limit the allowable disclosure and use of information that is deemed confidential under the 2011 Agreement.

41.     The 2011 Confidentiality Provisions define "Confidential Information" under the 2011 Agreement to include such things as data, specifications, processes, products, technologies, formulae, equipment, customer information, business information, drawings, pricing

information, inventions, trade secrets, and ideas that are owned by or in possession of Penford or MGPI Processing relating to the purpose of the 2011 Agreement.

42.     The 2011 Confidentiality Provisions provide, in pertinent part, that information deemed confidential under the 2011 Agreement will be used only in connection with the purpose of the 2011 Agreement, and that such information may be disclosed only to persons directly involved in the performance or evaluation of the 2011 Agreement, and even then only to such extent as is necessary.

43.     The 2011 Confidentiality Provisions further provide that they will remain in full force and effect for five years after the termination of the 2011 Agreement or the termination of the KSURF Agreement, whichever is later.

44.     On May 7, 2014, Penford's General Counsel, Christopher L. Lawlor, confirmed that "shortly after" execution of the 2011 Agreement, the unidentified customer referenced in the 2011 Agreement abandoned its plans to purchase any products from Penford that would have been covered by the 2011 Agreement.  A true and correct copy of the letter from Penford, dated May 7, 2014, is attached hereto as **Exhibit B** and made a part hereof by reference as though fully set forth herein.

45.     The 2011 Agreement has not been terminated, and thus the 2011 Agreement, including the 2011 Confidentiality Provisions, remains in full force and effect.  In any event, because the KSURF Agreement remains in full force and effect, the 2011 Confidentiality Provisions remain in full force and effect regardless of whether the 2011 Agreement remains in full force and effect.

## The Relationship between Penford and Ingredion

46.     On information and belief, Ingredion entered into a definitive agreement to acquire Penford on or about October 14, 2014, and successfully completed the acquisition on or about March 11, 2015.  As a result of that transaction, Penford is a wholly-owned subsidiary of Ingredion.

47.     On information and belief, since Ingredion's acquisition of Penford, the two companies have shared an overlapping business relationship controlled by Ingredion and have presented themselves as one and the same entity without distinction with respect to the manufacture, use, sale, offer for sale, importation, marketing, advertising, and/or promotion of the Accused Products.  For example, PenFibe RS is advertised on Ingredion's website as an Ingredion product.  In addition, Ingredion personnel have been involved in this lawsuit on behalf of Penford.

48.     Ingredion therefore has acted and continues to act in cooperation with Penford with respect to the manufacture, use, sale, offer for sale, importation, marketing, advertising, and/or promotion of the Accused Products, and is liable to the same extent as Penford for acts of patent infringement and misappropriation of trade secrets as alleged herein.

## DEFENDANTS' INFRINGEMENT OF THE '946 PATENT

### Pen-RS80

49.     On information and belief, Defendants utilized the sublicensed patent rights under the 2008 Agreement to make, use, sell, offer for sale, and/or import a product named Pen-RS80, which is an $RS_4$ resistant starch product derived from native potato starch using STMP or a mixture of STMP and STPP as a phosphorylating agent, as claimed in the '946 Patent.

50.     Defendants marketed and sold Pen-RS80 primarily to resellers and manufacturers of processed food products for incorporation of Pen-RS80 into their products, which were in turn sold to retailers and, ultimately, to end users for consumption.

51.     With knowledge of the '946 Patent and MGPI Processing's rights in the '946 Patent, Defendants continued to make, use, sell, offer for sale, and/or import Pen-RS80 after the termination of the 2008 Agreement, despite having no valid license to do so, thereby directly infringing at least one of the claims of the '946 Patent, including without limitation Claim 1 of the '946 Patent.  Defendants also indirectly infringed at least one of the claims of the '946 Patent, including without limitation Claim 9 of the '946 Patent, by marketing and selling Pen-RS80 to resellers and manufacturers of processed food products for incorporation of Pen-RS80 into their products, which in turn were sold to retailers and, ultimately, to end users for consumption.

52.     Defendants continued to infringe at least one of the claims of the '946 Patent by making, using, selling, offering for sale, and/or importing Pen-RS80 until at least July 2012. Between the termination of the 2008 Agreement on or about April 1, 2009, and the execution of the 2011 Agreement on February 7, 2011, Pen-RS80 was not the subject of any valid license between the parties.  In addition, following execution of the 2011 Agreement, Defendants sold Pen-RS80 to multiple customers, thereby exceeding its limited sublicense to produce potato-based $RS_4$ resistant starch for only a single, unidentified customer.

**PenFibe RS**

53.     Defendants market and sell, in this District and throughout the United States, a product named PenFibe RS, which Defendants advertise as "a potato-based resistant starch that

serves as a dietary fiber source." PenFibe RS is a chemically-modified, or RS4, resistant starch product derived from native potato starch.

54. Defendants market and sell PenFibe RS primarily to resellers and manufacturers of processed food products for incorporation of PenFibe RS into their products, which are in turn sold to retailers and, ultimately, to end users for consumption.

55. A technical data sheet for PenFibe RS, available on Defendants' respective websites, indicates that the product "is a food grade modified resistant potato starch that can be used to increase total dietary fiber of food and reduce caloric content." Moreover, the Nutritional Analysis on the technical data sheet indicates a higher-than-normal phosphorus content compared to that naturally found in native potato starch. This is highly indicative of a product that has been phosphorylated.

56. Based upon this information, MGPI Processing conducted and/or commissioned numerous analytical tests and chemical analyses of PenFibe RS samples, including a Nuclear Magnetic Resonance ("NMR") test.

57. These tests confirmed that PenFibe RS was created through phosphorylation from native potato starch in such a way as to infringe at least one of the claims of the '946 Patent. According to the scientist who analyzed the NMR test results, "[t]here can be no doubt that PenFibe is a phosphate cross-linked starch."

58. Defendants have been aware of the '946 Patent and MGPI Processing's rights in the '946 Patent since at least 2004 when Penford and MGPI Processing entered into the 2004 Confidentiality, Production, Non-Disclosure, and Broker Agreements.

59. On April 24, 2014, MGPI Processing sent Penford a letter directly raising its concerns regarding the contents of the PenFibe RS product and the likelihood that it infringes at

least one of the claims of the '946 Patent. In response, Penford argued that PenFibe RS does not infringe MGPI Processing's patent rights. *See* Exhibit B.

60. The PenFibe RS product is not, and has never been, the subject of any valid license between the parties. Penford's General Counsel has admitted that PenFibe RS is "not covered by or produced under the 2011 Agreement." *See* Exhibit B.

## DEFENDANTS' MISAPPROPRIATION OF MGPI PROCESSING'S TRADE SECRETS

61. Beginning in or about 2004, MGPI Processing disclosed to Penford certain trade secrets relating to its patented technology—including MGPI Processing's detailed specifications for manufacturing FiberStar/Fibersym 80, its "optimized process" for manufacturing and testing $RS_4$ resistant starch products such as FiberStar/Fibersym 80, and its confidential methods for assuring the high quality of its $RS_4$ resistant starch products (the "Trade Secrets").

62. The Trade Secrets are highly valuable to MGPI Processing by virtue of the fact that they are not generally known or reasonably ascertainable by proper means.

63. MGPI Processing took reasonable precautions under the circumstances to protect the Trade Secrets, and all parties with access to the Trade Secrets were subject to obligations to maintain their secrecy. MGPI Processing's reasonable efforts included without limitation its negotiation and execution of the 2004 Confidentiality Agreement and 2004 Non-Disclosure Agreement, and the 2008 Agreement and 2011 Agreement including their respective Confidentiality Provisions.

64. Penford gained access to the Trade Secrets in connection with the parties' negotiation and performance of the 2004 Production Agreement, the 2008 Agreement, and the 2011 Agreement. Penford therefore was under an obligation to maintain the secrecy of the Trade

Secrets pursuant to the 2004 Confidentiality Agreement, the 2004 Non-Disclosure Agreement, the 2008 Confidentiality Provisions, and the 2011 Confidentiality Provisions.

65. Despite having knowledge of their duty to maintain the secrecy and/or limit the use of the Trade Secrets, Defendants nonetheless willfully and maliciously disclosed and/or used the Trade Secrets without MGPI Processing's consent in connection with the continued manufacture, use, sale, offer for sale, and/or importation of Pen-RS80 after the termination of the 2008 Agreement.

66. Defendants also willfully and maliciously disclosed and/or used, and continue to willfully and maliciously disclose and/or use, the Trade Secrets without MGPI Processing's consent in connection with the manufacture, use, sale, offer for sale, and/or importation of PenFibe RS.

67. As a result of Defendants' unauthorized, willful, and malicious disclosure and/or use of the Trade Secrets, MGPI Processing has suffered injury in the form of lost profits and market share, and damage to its reputation and goodwill, in an amount to be proven at trial.

68. As a direct competitor to Defendants in the $RS_4$ resistant starch market, MGPI Processing has suffered, is suffering, and, unless Defendants' unlawful misappropriation of the Trade Secrets is enjoined by the Court, will continue to suffer immediate and irreparable injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.

**COUNT I**
**(Direct Infringement of U.S. Patent No. 5,855,946—35 U.S.C. § 271(a))**

69. MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

70.     Defendants have directly infringed, and continue to directly infringe, at least one of the claims of the '946 Patent under 35 U.S.C. § 271(a), including without limitation Claim 1 of the '946 Patent, either literally or under the doctrine of equivalents.

71.     Defendants' infringing acts include, without limitation:  making, using, selling, offering to sell, and/or importing products embodying at least one of the claims of the '946 Patent, including Pen-RS80 and PenFibe RS.

72.     Defendants' infringing acts are without license or authorization from MGPI Processing or KSURF.

73.     With knowledge of the '946 Patent and its claims since at least 2004, Defendants' infringement has been and continues to be reckless, without objective basis, and willful.

74.     As a direct and proximate consequence of Defendants' direct infringement of the '946 Patent, MGPI Processing has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights.

75.     Defendants' direct infringement is causing, has caused, and will continue to cause MGPI Processing significant injury, monetary harm in an amount to be proven at trial, and irreparable harm for which there is no adequate remedy at law.

76.     MGPI Processing has informed Defendants of their direct infringement of the '946 Patent and Defendants continue to knowingly and willfully infringe the '946 Patent in blatant disregard of the intellectual property rights of MGPI Processing.

**COUNT II**
**(Alternative Claim for Indirect Infringement of U.S. Patent No. 5,855,946:
Inducement under 35 U.S.C. § 271(b))**

77.     MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

78.     Defendants have indirectly infringed, and continue to indirectly infringe, at least one of the claims of the '946 Patent under 35 U.S.C. § 271(b), including without limitation Claim 9 of the '946 Patent, by intentionally and knowingly inducing purchasers of Pen-RS80 and PenFibe RS, primarily resellers and manufacturers of processed food products, to make, use, sell, offer for sale, and/or import food products that embody at least one of the claims of the '946 Patent, including without limitation Claim 9 of the '946 Patent.

79.     By making, using, selling, offering for sale, and/or importing food products that embody at least one of the claims of the '946 Patent, such purchasers of Pen-RS80 and PenFibe RS directly infringe at least one of the claims of the '946 Patent, either literally or under the doctrine of equivalents.  These infringing acts are without license or authorization from MGPI Processing or KSURF.

80.     Defendants have caused and encouraged such purchasers' infringement of the '946 Patent, and continue to cause and encourage such infringement, by:  marketing, advertising, and promoting Pen-RS80 and PenFibe RS to such purchasers as enhancing the nutritutional value of food products into which it is incorporated; and selling Pen-RS80 and PenFibe RS to such purchasers for use in their food products.

81.     Defendants have engaged and continue to engage in such acts with knowledge of the '946 Patent and its claims, and with the specific intent and knowledge that such purchasers utilize and/or incorporate Pen-RS80 or PenFibe RS in their food products and sell such food products to retailers and, ultimately, to end users for consumption, and that such induced acts constitute direct infringement of at least one of the claims of the '946 Patent, either literally or under the doctrine of equivalents.

82.     At the very least, Defendants have engaged and continue to engage in such acts believing there was and is a high probability that such purchasers utilize and/or incorporate Pen-RS80 or PenFibe RS in their food products and sell such food products to retailers and, ultimately, to end users for consumption, and that such induced acts constitute direct infringement of at least one of the claims of the '946 Patent, either literally or under the doctrine of equivalents, yet deliberately avoided confirmation of that belief.

83.     With knowledge of the '946 Patent and its claims since at least 2004, Defendants' indirect infringement by inducement has been and continues to be reckless, without objective basis, and willful.

84.     As a direct and proximate consequence of Defendants' indirect infringement of the '946 Patent, MGPI Processing has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights.

85.     Defendants' indirect infringement is causing, has caused, and will continue to cause MGPI Processing significant injury, monetary harm in an amount to be proven at trial, and irreparable harm for which there is no adequate remedy at law.

86.     MGPI Processing has informed Defendants of their indirect infringement of the '946 Patent and Defendants continue to knowingly and willfully infringe the '946 Patent in blatant disregard of the intellectual property rights of MGPI Processing.

**COUNT III**
**(Alternative Claim for Indirect Infringement of U.S. Patent No. 5,855,946:**
**Contributory Infringement under 35 U.S.C. § 271(c))**

87.     MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

88.     Defendants have contributed to infringement, and continue to contribute to infringement, of at least one of the claims of the '946 Patent under 35 U.S.C. § 271(c), including

without limitation Claim 9 of the '946 Patent, by selling and/or offering for sale Pen-RS80 and PenFibe RS to purchasers, primarily resellers and manufacturers of processed food products, for use as a material component in their food products which directly infringe at least one of the claims of the '946 Patent, including without limitation Claim 9 of the '946 Patent.

89.     Such purchasers of Pen-RS80 and PenFibe RS directly infringe at least one of the claims of the '946 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing food products that embody at least one of the claims of the '946 Patent.  These infringing acts are without license or authorization from MGPI Processing or KSURF.

90.     Pen-RS80 and PenFibe RS are especially made for use as ingredients in processed food products that embody at least one of the claims of the '946 Patent.

91.     Pen-RS80 and PenFibe RS are not staple articles or commodities of commerce suitable for substantial noninfringing use.  Their only substantial use is as ingredients in processed food products that embody at least one of the claims of the '946 Patent.

92.     Defendants have sold and/or offered for sale Pen-RS80 and PenFibe RS to purchasers for use as a material component in their food products with knowledge of the '946 Patent and its claims, and with knowledge that such purchasers' use of Pen-RS80 and/or PenFibe RS as a material component in their food products infringes at least one of the claims of the '946 Patent.

93.     With knowledge of the '946 Patent and its claims since at least 2004, Defendants' contributory infringement has been and continues to be reckless, without objective basis, and willful.

94.    As a direct and proximate consequence of Defendants' contributory infringement of the '946 Patent, MGPI Processing has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights.

95.    Defendants' contributory infringement is causing, has caused, and will continue to cause MGPI Processing significant injury, monetary harm in an amount to be proven at trial, and irreparable harm for which there is no adequate remedy at law.

96.    MGPI Processing has informed Defendants of their contributory infringement of the '946 Patent and Defendants continue to knowingly and willfully infringe the '946 Patent in blatant disregard of the intellectual property rights of MGPI Processing.

## COUNT IV
### (Misappropriation of Trade Secrets—Kan. Stat. Ann. §§ 60-3320 *et seq.*)

97.    MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

98.    MGPI Processing's data, specifications, processes, technologies, and formulae relating to the production of $RS_4$ resistant starch, specifically its detailed specifications for manufacturing FiberStar/Fibersym 80, its "optimized process" for manufacturing and testing $RS_4$ resistant starch products such as FiberStar/Fibersym 80, and its confidential methods for assuring the high quality of its $RS_4$ resistant starch products—*i.e.*, the Trade Secrets described above—constitute trade secrets under the Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. §§ 60-3320 *et seq.*, as they have independent economic value from not being generally known or readily ascertainable by proper means and MGPI Processing took reasonable efforts under the circumstances to maintain their secrecy.

99.     Defendants gained access to the Trade Secrets under circumstances creating a duty to maintain their secrecy.

100.    Defendants willfully and maliciously disclosed and/or used the Trade Secrets without MGPI Processing's consent in connection with the continued manufacture, use, sale, offer for sale, and/or importation of Pen-RS80 after the termination of the 2008 Agreement.

101.    Defendants also willfully and maliciously disclosed and/or used, and continue to willfully and maliciously disclose and/or use, the Trade Secrets without MGPI Processing's consent in connection with the manufacture, use, sale, offer for sale, and/or importation of PenFibe RS.

102.    Defendants' unauthorized, willful, and malicious disclosure and/or use of the Trade Secrets without MGPI Processing's consent constitutes misappropriation of trade secrets in violation of the Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. §§ 60-3320 *et seq.*

103.    As a direct and proximate consequence of Defendants' misappropriation of the Trade Secrets, MGPI Processing has suffered injury in the form of lost profits and market share, and damage to its reputation and goodwill, in an amount to be proven at trial.

104.    As a direct competitor to Defendants in the RS$_4$ resistant starch market, MGPI Processing has suffered, is suffering, and, unless Defendants' unlawful misappropriation of the Trade Secrets is enjoined by the Court, will continue to suffer immediate and irreparable injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.

105.    Defendants' misappropriation of the Trade Secrets was and continues to be willful and malicious, entitling MGPI Processing to an award of exemplary damages and attorney fees pursuant to Kan. Stat. Ann. §§ 60-3322 and 60-3323.

## COUNT V
## <u>(Common Law Unfair Competition)</u>

106.     MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

107.     Beginning in or about 2004, MGPI Processing disclosed to Defendants certain trade secrets and other confidential information relating to its patented technology—including MGPI Processing's detailed specifications for manufacturing FiberStar/Fibersym 80, its "optimized process" for manufacturing and testing $RS_4$ resistant starch products such as FiberStar/Fibersym 80, and its confidential methods for assuring the high quality of its $RS_4$ resistant starch products.

108.     Defendants willfully and maliciously disclosed and/or used MGPI Processing's trade secrets and other confidential information without MGPI Processing's consent in connection with the continued manufacture, use, sale, offer for sale, and/or importation of Pen-RS80 after the termination of the 2008 Agreement.

109.     Defendants also willfully and maliciously disclosed and/or used, and continue to willfully and maliciously disclose and/or use, MGPI Processing's trade secrets and other confidential information without MGPI Processing's consent in connection with the manufacture, use, sale, offer for sale, and/or importation of PenFibe RS.

110.     Defendants' unauthorized, willful, and malicious disclosure and/or use of MGPI Processing's trade secrets and other confidential information without MGPI Processing's consent constitutes unfair competition in violation of the common law of the State of Kansas.

111.     As a direct and proximate consequence of Defendants' unfair competition, MGPI Processing has suffered injury in the form of lost profits and market share, and damage to its reputation and goodwill, in an amount to be proven at trial.

112. As a direct competitor to Defendants in the RS$_4$ resistant starch market, MGPI Processing has suffered, is suffering, and, unless Defendants' unfair competition is enjoined by the Court, will continue to suffer immediate and irreparable injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.

## COUNT VI
## (Violation of Kansas Restraint of Trade Act—Kan. Stat. Ann. §§ 50-112 and 50-161)

113. MGPI Processing incorporates by reference all previous allegations made as if set forth herein.

114. A business arrangement exists between Defendants Penford and Ingredion with respect to the manufacture, use, sale, offer for sale, importation, marketing, advertising, and/or promotion of Pen-RS80 and PenFibe RS, through which they compete directly with MGPI Processing in the RS$_4$ resistant starch market.

115. Through this business arrangement, Defendants have willfully and maliciously disclosed and/or used, and continue to willfully and maliciously disclose and/or use, MGPI Processing's trade secrets and other confidential information without MGPI Processing's consent in connection with the manufacture, use, sale, offer for sale, and/or importation of Pen-RS80 and PenFibe RS.

116. Defendants' unlawful disclosure and/or use of MGPI Processing's trade secrets and other confidential information without MGPI Processing's consent in connection with the manufacture, use, sale, offer for sale, and/or importation of Pen-RS80 and PenFibe RS, undertaken pursuant to Defendants' business relationship, tends to prevent full and free competition in the RS$_4$ resistant starch market in Kansas and elsewhere, in violation of the Kansas Restraint of Trade Act, Kan. Stat. Ann. § 50-112.

117. As a direct and proximate consequence of Defendants' unlawful restraint of trade, MGPI Processing has suffered injury in the form of lost profits and market share, and damage to its reputation and goodwill, in an amount to be proven at trial.

118. Unless Defendants' unlawful actions in restraint of trade are enjoined by the Court, MGPI Processing will continue to suffer immediate and irreparable injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MGPI Processing, Inc. respectfully prays for a judgment against Defendants as follows:

(a)     A judgment that Defendants have infringed at least one of the claims of the '946 Patent, directly, either literally or under the doctrine of equivalents, or indirectly by inducement and/or contributory infringement;

(b)     A judgment that Defendants have misappropriated MGPI Processing's trade secrets in violation of the Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. §§ 60-3320 *et seq.*;

(c)     A judgment that Defendants have engaged in unfair competition in violation of the common law of the State of Kansas;

(d)     A judgment that Defendants have engaged in acts in violation of the Kansas Restraint of Trade Act, Kan. Stat. Ann. § 50-112;

(e)     A preliminary and permanent injunction restraining Defendants, their officers, directors, employees, agents, representatives, and affiliates, and all persons acting in concert with Defendants, from engaging in any continued manufacture, use, sale, or offer for sale of Pen-RS80 and PenFibe RS or any other infringement of the '946 Patent;

(f)     A preliminary and permanent injunction restraining Defendants, their officers, directors, employees, agents, representatives, and affiliates, and all persons acting in concert with Defendants, from engaging in any further misappropriation of MGPI Processing's trade secrets or any future acts of unfair competition or acts in restraint of trade;

(g)     An award of all monetary damages to which MGPI Processing is entitled under 35 U.S.C. § 284 for Defendants' past and continuing infringement of the '946 Patent, including without limitation all lost profits and/or reasonable royalties, and an order requiring a full accounting of the same;

(h)     Enhanced damages in accordance with the provisions of 35 U.S.C. § 285 as a result of the knowing, willful, and wanton nature of Defendants' infringing conduct;

(i)     An award of all monetary damages to which MGPI Processing is entitled by law for Defendants' misappropriation of MGPI Processing's trade secrets, including without limitation exemplary damages and attorney fees under Kan. Stat. Ann. §§ 60-3322 and 60-3323.

(j)     An award of all monetary damages to which MGPI Processing is entitled by law for Defendants' unfair competition;

(k)     An award of all monetary damages to which MGPI Processing is entitled under Kan. Stat. Ann. § 50-161 for Defendants' unlawful restraint of trade in violation of Kan. Stat. Ann. 50-112, including treble damages, attorney fees, and costs as set forth in Kan. Stat. Ann. § 50-161;

(l)     A finding that this case is exceptional under 35 U.S.C. § 285 and an award of all attorney fees incurred by MGPI Processing in this action;

(m)     An award of MGPI Processing's costs in bringing and prosecuting this action;

(n)     An assessment of interest, both pre- and post-judgment, on the damages awarded;

(o)     An accounting of all goods in Defendants' possession, custody, or control that infringe the '946 Patent and an Order directing that all such goods be delivered up and destroyed within thirty (30) days from the entry of judgment; and

(p)     Any such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), MGPI Processing hereby demands a jury trial on all issues so triable.


Dated: January 15, 2016                    Respectfully submitted,

                                           LATHROP & GAGE LLP


                               By:     /s/ David R. Barnard
                                       David R. Barnard  (KS #17955)
                                       dbarnard@lathropgage.com
                                       David R. Frye (KS #18133)
                                       dfrye@lathropage.com
                                       2345 Grand Boulevard, Suite 2800
                                       Kansas City, MO 64108-2612
                                       Tel: (816) 292-2000
                                       Fax: (816) 292-2001

                                       Emily R. Davis (KS #25444)
                                       edavis@lathropgage.com
                                       10851 Mastin Boulevard
                                       Building 82, Suite 1000
                                       Overland Park, KS  66210-1669
                                       Tel: (913) 451-5100
                                       Fax: (913) 451-0875

                                       *Attorneys for Plaintiff*
                                       *MGPI Processing, Inc.*